**RECORD NOS. 15-1988(L); 15-2071 XAP**

In The

# United States Court Of Appeals
# For The Fourth Circuit

# NCO FINANCIAL SYSTEMS, INC.,

*Plaintiff – Appellee/Cross-Appellant,*

v.

# MONTGOMERY PARK, LLC,

*Defendant – Appellant/Cross-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE**

––––––––––––––––––

**BRIEF OF APPELLANT/CROSS-APPELLEE**

––––––––––––––––––

John E. McCann, Jr.
Ranak K. Jasani
MILES & STOCKBRIDGE, PC
100 Light Street
Baltimore, MD 21202
(410) 385-3580

*Counsel for
  Appellant/Cross-Appellee*

Howard G. Goldberg
GOLDBERG & BANKS, PC
1829 Reisterstown Road
Suite 120
Baltimore, MD 21208
(443) 940-1340

*Counsel for
  Appellant/Cross-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1988__    Caption: __NCO Financial Systems, Inc. v. Montgomery Park, LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Montgomery Park, LLC__
(name of party/amicus)


who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.   Does party/amicus have any parent corporations?   ☑ YES ☐ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

     The sole member of Appellant is Trainshed LLC, which, in turn, has multiple members, but no single corporate parent.


3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: ___September 4, 2015___

Counsel for: Appellant, Montgomery Park, LLC

## CERTIFICATE OF SERVICE
****************************

I certify that on ___September 4, 2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Norman E. Greenspan, Esquire
Starfield & Smith, p.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA 19034
(215) 542-7070
NGreenspan@starfieldsmith.com

Andrew Levy, Esquire
Brown, Goldstein & Levy
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
(410) 962-1030
adl@browngold.com

_____
(signature)

___September 4, 2015___
(date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF ISSUES ................................................................. 1

STATEMENT OF THE CASE ............................................................. 2

    I.    Statement of Facts ................................................................. 4

        A.    Pertinent Provisions of the Lease .............................. 5

            1.    The Early Termination Provision ..................... 5

            2.    The Rent Provisions of the Lease .................... 7

            3.    The Janitorial Allowance .................................. 8

            4.    Other Key Provisions ....................................... 9

        B.    NCO's Failure to Exercise Its Limited Right of Early Termination .......................................................... 9

        C.    Montgomery Park Notifies NCO of its Failure to Exercise its Early Termination Option .................... 12

        D.    NCO Vacates the Premises and Defaults on its Obligation to Pay Rent ............................................. 13

        E.    Competing Claims Regarding the Early Termination Provision ................................................................. 13

    II.    The District Court's Ruling on the Early Termination Issue ............. 15

    III.    Trial and the Entry of Final Judgment ................................. 17

SUMMARY OF THE ARGUMENT ...................................................... 18

i

ARGUMENT ...........................................................................................20

I.    Standard of Review ...........................................................20

II.   The District Court's Construction of the Early Termination
      Provision was Wrong as a Matter of Law ...........................................21

      A.    Maryland Law Regarding Contractual Options........................22

      B.    The District Court Misread the Early Termination
            Provision ....................................................................23

      C.    The District Court Misapplied the Law ....................................25

      D.    The District Court's Unsupported Finding of
            Impracticality Cannot Transform an Express Condition
            into a "Non-Material Covenant"................................................30

II.   Even if Accepted, the District Court's Erroneous Construction
      of the Early Termination Provision Precluded Summary
      Judgment in Favor of NCO ...................................................33

      A.    The Parties' Intent to Condition the Option on NCO's
            Timely Payment of the Termination Fee in the Required
            Amount.......................................................................36

      B.    NCO's Purported "Good Faith" Attempt to Strictly
            Comply with the Early Termination Provision........................37

      C.    The Materiality of NCO's Failure to pay the Termination
            Fee in the Required Amount .......................................... 38

CONCLUSION.......................................................................................39

REQUEST FOR ORAL ARGUMENT ................................................................40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Beckenheimer's Inc. v. Alameda Associates*,
  611 A.2d 105 (Md. 1992) ....................................................................*passim*

*Bond v. Messerman*,
  873 A.2d 417 (Md. App. 2005) ...................................................................38

*Builder's Mutual Ins. Co. v. Parallel Design & Dev. LLC*,
  785 F. Supp. 2d 535 (E.D. Va. 2011) ..........................................................25

*Calomiris v. Woods*,
  727 A.2d 358 (Md. 1999) ...........................................................................25

*Chesapeake Bank of Maryland v. Monro Muffler/Brake, Inc.*,
  891 A. 2d 384 (Md. App. 2006) .............................................................*passim*

*Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*,
  73 A.3d 224 (Md. 2013) .............................................................................21

*Elderkin v. Carroll*,
  941 A.2d 1127 (Md. 2008) ........................................................22, 28, 29, 30

*Foard v. Snider*,
  109 A.2d 101 (Md. 1954) ...........................................................................22

*General Motors Acceptance Corp. v. Daniels*,
  492 A.2d 1306 (Md. 1985) ..................................................................... 21-22

*Holzman v. Fiola Blum Inc.*,
  726 A.2d 818 (Md. 1999) ...........................................................................23

*Middlebrook Tech LLC v. Moore*,
  849 A.2d 63 (Md. App. 2004) .....................................................................21

*Montgomery Park, LLC v. NCO Financial Systems, Inc.*,
  No. 14-274 (4th Cir. July 7, 2014) .................................................................3

*Nadar v. Blair,*
    549 F.3d 953 (4th Cir. 2008) ............................................................21

*Ocean Petroleum, Co., Inc. v. Yanek,*
    5 A.3d 683 (Md. 2010) ................................................................25

*Sy-Lene of Washington Inc., v. Starwood Urban Retail II, LLC,*
    829 A.2d 540 (Md. 2003) .......................................................22, 35

*Taylor v. Nationsbank, N.A.,*
    776 A.2d 645 (Md. 1999) ............................................................21

*Washington Metro Area Transit Authority v.*
*Potomac Investment Properties Inc.,*
    476 F.3d 231 (4th Cir. 2007) ........................................... 20-21, 35

*Weaver v. Zenimax,*
    923 A.2d 1032 (Md. App. 2007) ............................................ 38-39

*Weichart v. Faust,*
    19 A.3d 393 (Md. 2011) ..............................................................38

*Xoom Inc. v. Imageline, Inc.,*
    323 F.3d 279 (4th Cir. 2003) .....................................................21

**Statutes:**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1292(b) ...............................................................................3

28 U.S.C. § 1332 ....................................................................................1

**Rule:**

FED. R. CIV. P. 56(c)...........................................................................21

## STATEMENT OF JURISDICTION

These cross-appeals are taken from the final judgment entered by the United States District Court for the District of Maryland (the "District Court") in a case arising out of a commercial lease dispute between Defendant-Appellant, Montgomery Park, LLC ("Montgomery Park") and its former tenant, Plaintiff-Appellee, NCO Financial Systems, Inc., now known as EGS Financial Care, Inc. ("NCO"). Subject matter jurisdiction over this action is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Montgomery Park appeals from the final judgment entered by the District Court on August 19, 2015. (JA 1274-77). Montgomery Park filed its Notice of Appeal on August 27, 2015. (JA 1278-79). NCO filed its Notice of Cross-Appeal on September 11, 2015. (JA 1280-81).

## STATEMENT OF ISSUES

1.     Whether the District Court erred as a matter of law by holding that NCO terminated the Lease pursuant to an early termination option, notwithstanding its failure to comply with a condition to the option for which "strict compliance" was expressly required.

2.     Whether the District Court erred in holding as a matter law that: (i) the amount of the Termination Fee was a mere covenant, not a condition to the early termination option in the Lease; (ii) NCO's attempt to terminate the Lease

early was done in good faith; and (iii) NCO's failure to pay the requisite amount of the Termination Fee was not material.

## STATEMENT OF THE CASE

This case arises out of a dispute regarding NCO's attempt to exercise an early termination option in an Office Lease Agreement between the parties dated October 8, 2002 (the "Lease"). (JA 126 - 227). In its Complaint, NCO sought a declaratory judgment that it had properly exercised the early termination option in the Lease. (JA 24-26). NCO also brought claims sounding in breach of contract, unjust enrichment and fraud based on the allegation that it had been overcharged Rent based on a purportedly false representation by Montgomery Park as to the rentable square footage of the leased Premises (the "Overcharge Claims"). (JA 22-24). Montgomery Park denied liability for all claims asserted by NCO (JA 27 - 39), and filed counterclaims seeking: (i) a declaratory judgment that NCO had not properly terminated the Lease; and (ii) monetary damages for breach of contract arising out of NCO's failure to pay Rent during the remaining term of the Lease. (JA 39 - 48).

By Opinion and Order dated December 20, 2013, the District Court granted partial summary judgment in favor of NCO on the competing declaratory judgment claims regarding NCO's attempt to exercise its early termination option and Montgomery Park's related claim for breach of contract. (JA 756-65; 770-71). The

District Court held that notwithstanding NCO's improper deduction of a Janitorial Allowance from the required Termination Fee, NCO, nevertheless, terminated the Lease early. (*Id*.).  By subsequent Order dated May 27, 2014, the District Court further denied Montgomery Park's Motion for Reconsideration of that decision. (JA 772- 75).[1]

The remaining Overcharge Claims were then tried to the bench on July 6 through July 8 of 2015, before the Honorable Judge George L. Russell, III.  At the close of NCO's case, Judge Russell granted Montgomery Park's Motion for Judgment on the Overcharge Claims. (JA 1149-58).  By subsequent Orders dated August 19, 2015, the District Court entered final judgment in favor of Montgomery Park with respect to NCO's Overcharge Claims (JA 1277) and in the amount of $100,721.42 – an amount equal to the Janitorial Allowance that NCO improperly deducted from the Termination Fee, plus pre-judgment interest as permitted by law. (JA 1274-76).

Montgomery Park now appeals the District Court's entry of summary judgment declaring that NCO terminated the Lease early, and against Montgomery Park on its counterclaims.

---

[1] The District Court, nevertheless, granted Montgomery Park leave to file with this Court a Petition for Permission to Appeal Interlocutory Order, pursuant to 28 U.S.C. § 1292(b). (JA 775).  By Order dated July 7, 2014, this Court denied Montgomery Park's Petition to seek an interlocutory appeal of the District Court's summary judgment ruling on the early termination issue. *See Montgomery Park, LLC v. NCO Financial Systems, Inc.,* No. 14-274 (4th Cir. July 7, 2014).

## I.      Statement of Facts

Pursuant to the Lease, NCO (as Tenant) agreed to lease certain space from Montgomery Park (as Landlord) in a Building located at 1800 Washington Park Boulevard, Baltimore, Maryland, which is part of a complex known as the Montgomery Park Business Center.[2]   Under Section 1.01 of the Lease, its initial "Term" was twelve years from a "Commencement Date" defined in terms of Montgomery Park's substantial completion of certain "Space Improvements" made to the leased Premises in the months following execution of the Lease. (JA 129). As reflected in a Commencement Date Agreement signed pursuant to Section 1.02 of the Lease, the Term of the Lease commenced on March 15, 2003 and was to terminate on March 31, 2015, unless earlier terminated by NCO pursuant to an Early Termination Provision. (JA 130; 229).

---

[2] In its opening Recital, the Lease defines the leased Premises as:

> [C]ertain space containing **approximately** 106,267 rentable square feet of floor area (the 'Premises') known as and comprised of (i) Section 2 of the first floor and (ii) Sections 1, 2 and 4, as well as the second floor of the boiler house on the second floor of a building (the 'Building'), as more particularly shown on the floor plan attached hereto as Exhibit A-1, . . .

(JA 128) (emphasis added).

A.      **Pertinent Provisions of the Lease**

1.      **The Early Termination Provision**

Although the Term of the Lease is twelve years, the Lease affords NCO a limited, "one-time conditional right" to terminate the Lease after eight years, provided that NCO strictly comply with certain conditions. (JA 135-36).  Among those conditions is the timely payment of a Termination Fee in the amount of ten months' Rent payable in two equal installments.  (*Id.*).  Specifically, Section 1.05 of the Lease, which is comprised of three sentences,[3] provides in pertinent part:

> **<u>Limited Right of Early Termination:</u>**  **[1]** Tenant shall have a one-time, ***conditional*** right to terminate this Lease (the 'Termination Right'), effective on that date which is eight years after the Commencement Date (the 'Termination Effective Date'), upon Tenant's ***strict compliance*** with ***all*** of the following requirements:
>
> (a) Tenant shall deliver to Landlord (not later than ten (10) months prior to the Termination Effective Date (such notice deadline, the 'Termination Notice Deadline')) a written notice (the 'Termination Notice') stating that Tenant elects to exercise this Termination Right; and
>
> (b) Tenant shall pay to Landlord (50% simultaneously with delivery of the Termination Notice and the remaining 50% balance at least three (3) months prior to the Termination Effective Date), a termination fee (the 'Termination Fee') ***equal to ten (10) times the monthly installment*** (which will be in effect as of the Termination Effective Date) ***of Rent*** (including without limitation, all Additional Rent on account of Taxes or Operating Expenses).

---

[3] The three sentences of Section 1.05 are not numbered in the Lease, but are so numbered herein for purposes of later explaining the District Court's decision.  In its Opinion and Order dated May 27, 2014, the District Court similarly referenced these three sentences by number in explaining its ruling. (JA 773-74).

**[2]** *If (and only if)* Tenant both timely delivers the Termination Notice and timely pays the Termination Fee *as required above,* then the Lease will be terminated effective on the Termination Effective Date.

**[3]** Tenant shall not have the right to terminate this Lease *if* it fails either timely to deliver the Termination Notice or timely pay the Termination Fee. . . .

(JA 135) (emphasis added).    Hereinafter, Section 1.05 of the Lease shall be referred to as the "Early Termination Provision."

Based on the Commencement Date of March 15, 2003, the "Termination Effective Date" was March 15, 2011. (JA 135; 229).  In order to exercise its option under the Early Termination Provision, therefore, NCO had to: (1) deliver to Montgomery Park written notice of its election to exercise its option, and simultaneously pay 50% of the Termination Fee by May 15, 2010 (*i.e.,* "ten (10) months prior to the Termination Effective Date"); and (2) pay Montgomery Park the remaining 50% of the Termination Fee by December 15, 2010 (*i.e.,* "three (3) months prior to the Termination Effective Date."). (*Id.*).    The amount of the Termination Fee that must be paid by NCO is "equal to ten (10) times the monthly installment (which will be in effect as of the Termination Effective Date) of *Rent* (including without limitation, all Additional Rent on account of Taxes or Operating Expenses)." (*Id.*) (emphasis added).

6

## 2.    The Rent Provisions of the Lease

"Rent" as referenced in the Early Termination Provision is a defined term in Article II, Section 2.04(A) of the Lease: "All Base Rent and Additional Rent are sometimes hereinafter together referred to as 'Rent.'" (JA 149).

"Base Rent" is defined in Section 2.01 as "a minimum annual rental in each one-year period during the Term hereof, . . ." (JA 138). In calculating Base Rent, Section 2.01(1) of the Lease provides that, "Base Rent for the first one-year period in the Term shall be the sum of $1,594,005.00 (representing $15.00 per rentable square foot of the Premises) payable in equal monthly installments of $132,833.75 each." (*Id.*). The "Base Rent" for the first year is then subject to increase in ensuing years based on inflation as measured by the Consumer Price Index ("CPI") pursuant to a formula set forth in Section 2.01(2) of the Lease. (JA 139).

In addition to this "Base Rent," NCO also was obligated to pay "Additional Rent," including its "Proportionate Share" of annual increases in "Real Estate Taxes" (JA 139-41) and "Operating Expenses" (JA 141-48). With respect to "Operating Expenses," Section 2.03(A) of the Lease provides that, "Tenant shall pay to Landlord in each year or part year of the Term a ***Proportionate Share*** of the amount by which the Operating Expenses (defined below) for each year exceed the Base Operating Expenses (defined below)." (JA 141) (emphasis

added). After prescribing a contractual formula for determining the "Tenant's Proportionate Share" as a fraction of the rentable square footage of NCO's Premises in relation to the broader Property, the Lease defines Operating Expenses as follows:

> ***Subject to the foregoing***, 'Operating Expenses' shall mean all expenses, costs and disbursements of every kind and nature incurred in connection with the ownership, management, maintenance, repair and operation of the Property, including but not limited to the following: . . . (4) costs incurred under all maintenance and service agreements for the Building, including but not limited to access control, energy management services, window cleaning, elevator and escalator maintenance, ***common area janitorial service*** and landscaping; . . . .

(JA 142) (emphasis added).

### 3.    The Janitorial Allowance

Article VI of the Lease addresses the provision of certain "Maintenance and Services." (JA 164-67). As part of the "Ordinary Services" provided to the Tenant, Section 6.01 of the Lease provides, in pertinent part:

> Landlord shall procure janitorial services for Tenant at the Premises at Tenant's request, unless Tenant contracts (at Tenant's election) with its own janitorial service provider; provided, however, Landlord shall provide Tenant with an annual janitorial allowance (the "Janitorial Allowance*")* of up to $1.00 per usable square foot per annum ***towards the costs incurred in obtaining janitorial services.*** Tenant shall be solely responsible in each year of the Term of the Lease for any janitorial costs in excess of the Janitorial Allowance. The amount of the Janitorial Allowance shall be prorated on a per diem basis for any partial year.

8

(JA 164-65) (emphasis added). Nothing in the Lease indicates that this annual Janitorial Allowance under Article VI is a component of "Rent" as defined in Article II of the Lease. Furthermore, nothing in the Lease permits NCO to deduct the Janitorial Allowance from the Termination Fee required by the Early Termination Provision.

### 4. Other Key Provisions

Under Section 14.01 of the Lease, NCO's failure to pay Rent when due and payable constitutes an "Event of Default." (JA 181). The Lease is fully integrated and expressly provides in Section 17.01 that it "supersedes all prior written or oral negotiations, representations, warranties, statements or agreements between the parties hereto as to the same." (JA 187). Under Section 17.03, the Lease is governed by Maryland law. (*Id*.).

### B.    NCO's Failure to Exercise Its Limited Right of Early Termination

In the Spring of 2010, NCO decided to exercise its option under the Early Termination Provision of the Lease. By letter dated May 12, 2010, NCO provided to Montgomery Park the 10-months' prior written notice required by the Early Termination Provision. (JA 241; 497). In the May 12 notice letter, NCO stated that "50% of [the] termination fee, as required by the Lease, in the amount of $779,964.15, will be simultaneously remitted under separate cover to PNC Bank, National Association as Administrative Agent" – a payment that, in fact, was

9

received by the Bank. (JA 241; 243-45; 367). As reflected in a spreadsheet prepared by NCO's Vice President of Global Real Estate, Cynthia L. Evinrude, NCO calculated the Termination Fee to be $1,559,928.30 comprised of 10-month's Base Rent, plus estimated increases in Real Estate Taxes and Operating Expenses (*i.e*., "Additional Rent" under the Lease). (JA 331-32, 611-12). As Ms. Evinrude confirmed at her deposition, the initial 50% installment of the Termination Fee in the amount of $779,964.15 did not include a deduction for the Janitorial Allowance. (JA 366-67). Montgomery Park accepted the first installment payment without objection and never contested the amount of that payment.[4]

The Early Termination Provision required the second 50% installment of the Termination Fee to be paid by December 15, 2010. (JA 135). When NCO made its second installment payment, it deducted from the second installment payment $79,067.70 as a "janitorial credit" from the Termination Fee, delivering only $697,100.55 to PNC Bank. (JA 370-78; 614-18). At her deposition, Ms. Evinrude acknowledged that NCO chose to deduct the entirety of the "janitorial credit" against the second installment payment. (JA 376). Prior to making that payment, NCO never notified Montgomery Park of its intention to reduce the second installment payment by the so-called "janitorial credit." (JA 374).

---

[4] As detailed below, the only objection raised by Montgomery Park related to NCO's deduction of the Janitorial Allowance from its second installment payment of the Termination Fee. (JA 255-58; 554-56; 598-99).

As anticipated in its May 12, 2010 notice letter, NCO made certain adjustments to the "Additional Rent" calculations in the context of the second termination payment. (JA 241; 370-78; 614-18). In calculating the second installment payment of the Termination Fee, NCO adjusted the real estate component based on an ***actual*** tax bill received in 2010. (JA 371; 377; 614). The Operating Expense component of the second payment was based on a revised calculation for 2008 Operating Expenses, which Montgomery Park agreed would suffice for purposes of calculating the Termination Fee. (JA 372-73; 377; 614-617).[5] Those anticipated adjustments to prior estimates (which were never disputed by Montgomery Park) had nothing to do with the "janitorial credit" taken by NCO in connection with the second installment payment. (JA 373-74). Nothing in the May 12, 2010 notification letter indicated in any way that NCO would later deduct a "janitorial credit" from the Termination Fee. (JA 241).

---

[5] In her deposition, Ms. Evinrude testified as follows:

> Q.    And so you understood that Montgomery Park agreed that using the 2008 numbers would suffice for purposes of calculating the termination fee, correct?

> A.    Correct.

(JA 372-373).

### C. Montgomery Park Notifies NCO of its Failure to Exercise its Early Termination Option

By letter dated February 9, 2011, Montgomery Park notified NCO that its attempt to exercise the option under the Early Termination Provision was ineffective. (JA 255-58; 556). In that letter, Montgomery Park did not dispute NCO's adjustments with respect to Real Estate Taxes and Operating Expenses in calculating the second installment payment of the Termination Fee. (*Id.*) Rather, the sole basis for Montgomery Park's contention that NCO had not terminated the Lease early was its improper deduction of the "janitorial credit" from the second installment payment. (JA 255-58; 554-56; 598-99).[6]

By letter dated February 14, 2011, NCO responded to Montgomery Park by stating that it disagreed with Montgomery Park's position. (JA 260). In so doing, NCO asserted that it had "timely and ***completely*** fulfilled ***all the requirements*** for early termination set forth in Section 1.05 of the Lease." (*Id.*) (emphasis added).

---

[6] In the February 9, 2011 letter, Montgomery Park specifically asked NCO "to provide evidence of the date such funds [*i.e.,* the second installment payment] were delivered to PNC Bank." (JA 256). NCO provided no such evidence in response to that letter, but later produced in discovery a shipping receipt indicating that the second installment payment (although not in the proper amount) was received by PNC Bank on December 15, 2010. (JA 253). At that point in the litigation, the timeliness of the second installment payment was no longer an issue in the case, thereby leaving NCO's improper deduction of the "janitorial credit" as the lone basis for Montgomery Park's position that NCO had not exercised its option in strict compliance with the conditions set forth in the Early Termination Provision.

**D.    NCO Vacates the Premises and Defaults on its Obligation to Pay Rent**

By letter dated April 29, 2011, NCO notified Montgomery Park of its intention to vacate the leased Premises on May 31, 2011. (JA 514-15; 634).  In response, Montgomery Park sent a letter to NCO dated May 3, 2011, in which Montgomery Park reminded NCO that notwithstanding its stated intention to vacate the Premises:

> NCO did not comply with the provisions of Section 1.05 of the Lease and, therefore, did not terminate the Lease early.  Thus, the Lease remains in full force and effect, and NCO may continue to occupy the Premises as long as it complies with the terms of the Lease, including, but not limited to, the continued timely payment of rent for the remaining term of the Lease.

(JA 382; 636-37).   NCO, nevertheless, vacated the Premises on May 31, 2011 and thereafter stopped paying Rent. (JA 517).   By letter dated July 13, 2011, Montgomery Park gave NCO notice that it was in default of the Lease for failure to pay Rent. (JA 518-19; 639-40).  NCO has never cured its default and has failed to pay any Rent under the Lease after May of 2011.  (JA 517).

**E.    Competing Claims Regarding the Early Termination Provision**

In Count IV of its Complaint, NCO sought a declaratory judgment that it had "properly terminated the Lease early in accordance with the Early Termination Provision, . . ." (JA 24-26). NCO specifically alleged in paragraph 63 of its Complaint that, "the Janitorial Allowance (which is part of the total

13

monthly Rent paid by NCO) is to be accounted for in the amount of the Termination Fee." (JA 25). Based on that allegation, NCO maintained that its deduction of the Janitorial Allowance from its second installment of the Termination Fee was proper. (JA 25). In the alternative, NCO alleged in paragraph 64 of its Complaint that:

> If it is determined that the Termination Fee does not include the Janitorial Allowance, the proper remedy is for NCO to pay the amount of the Janitorial Allowance not included in the Termination Fee and to allow the Lease to terminate on March 15, 2011.

(JA 25).

In Count I of its Counterclaim, Montgomery Park sought a declaratory judgment that "the Lease was not terminated as of March 15, 2011 and remains in full and force and effect." (JA 43-45). The basis for this Counterclaim was NCO's failure to "pay the full Termination Fee in accordance with the requirements of Section 1.05 of the Lease, [by] . . . improperly deduct[ing] $79,067.70 as a 'janitorial credit' from the Termination Fee." (JA 43).

As specifically pled by the parties, therefore, the "case-in-controversy" posited by both parties in their competing declaratory judgment claims was the propriety of NCO's deduction of the Janitorial Allowance from the Termination Fee. Nowhere in the Complaint, or in its Answer to Montgomery Park's Counterclaim (JA 49-53), did NCO allege that it was incapable of calculating the proper amount of the Termination Fee or that such a calculation was impractical.

14

To the contrary, NCO affirmatively sought a declaration from the Court that its payment of the Termination Fee, less the Janitorial Allowance, was proper under the Early Termination Provision. (JA 25).

## II.    The District Court's Ruling on the Early Termination Issue

After full discovery, the parties filed cross-motions for partial summary judgment on various claims and issues in the case. (JA 745).  With respect to the issue of early termination, NCO moved for summary judgment on the grounds that, as a matter of law, it was entitled to deduct the Janitorial Allowance from the Termination Fee as a "credit against rent." (JA 757-58).

In rejecting this argument, the District Court looked to the plain language of the Lease. (JA 759-60).  Based on its review of the pertinent provisions regarding "Rent" in Article II of the Lease, the District Court concluded:

> Based on the plain language of the Lease, Operating Expenses include only common area janitorial costs.  The Operating Expenses component of Rent is silent on the issue of tenant-specific janitorial costs, which are plainly addressed in a separate section that is specific with respect to how those costs will be allocated between the parties.  Thus, on the face of the Lease, Montgomery Park's annual credit obligation with respect to the Janitorial Allowance is unambiguously separate from NCO's monthly rent obligation.

(JA 760). The Court further reasoned that, "Unlike 'Rent,' which is the payment obligation of NCO, the Janitorial Allowance is a credit obligation of Montgomery Park **toward the costs incurred in** obtaining janitorial services whether procured

15

by the Landlord or the Tenant." (JA 760) (emphasis in original). Based on this analysis, the District Court found, "that NCO did not properly calculate the required Termination Fee." (*Id.*)

Despite finding that NCO failed to pay the Termination Fee in the amount required by the Lease, the District Court found that, "The Lease does not make clear that proper calculation of the Termination Fee is a required condition of early termination." (JA 764). Notwithstanding that the Early Termination Provision demanded "***strict compliance***" with "***all***" requirements, including payment of a Termination Fee "***equal to ten (10) times the monthly installment . . . of Rent . . .***" (JA 135) (emphasis added). the District Court held that NCO's failure to pay the Termination Fee in the requisite amount was not fatal to its exercise of the early termination option. (JA 760-65). In reaching this conclusion, the District Court found that, "an exact calculation of the Termination Fee was ***impractical*** given the requirement that NCO include in its calculation fees incurred after the Termination Fee was due and requiring the parties to engage in an accounting of those costs before ultimately determining appropriate adjustments in the final fee amount." (JA 774; 764-65) (emphasis added).

Based on these findings, the District Court held that "a more flexible standard" is appropriate under Maryland law. (JA 764-65; 774). Under this more flexible approach, the District Court held that the amount of the Termination Fee

16

was a "non-material covenant," not a condition precedent to the exercise of the termination option. (JA 763-64; 773-74). Thus, even though NCO failed to pay the Termination Fee in the requisite amount by deducting the Janitorial Allowance, the District Court found as matter of law that NCO, nevertheless, terminated the Lease early. Specifically, the District Court held that:

> [U]nder these facts, NCO's ***good faith attempt*** to strictly comply with the conditions precedent amounts to proper performance of the Early Termination option, and that NCO's failure to calculate the Termination Fee was ***a non-material breach subject to remedy.*** Thus, there is no genuine dispute of material fact, and the Court finds NCO properly terminated the Lease under the Early Termination Provision, without prejudice to Montgomery Park's right to reconcile the disparities in the final amount.

(JA 765) (emphasis added).

## III.   Trial and the Entry of Final Judgment

In the wake of the District Court's summary judgment ruling, the parties proceeded to a bench trial on the surviving Overcharge Claims. At the close of NCO's case, the District Court granted Montgomery Park's Motion for Judgment with respect to NCO's Overcharge Claims. (JA 1149-58). At that point, Montgomery Park requested the only remedy left to it under the District Court's earlier summary judgment ruling, *i.e.*, payment of the $79,067.70 amount improperly deducted from the Termination Fee. (JA 1158-61). At trial, the parties stipulated that the shorted $79,067.70 had not been paid by NCO to Montgomery Park. (JA 1158). Based on that stipulation and in the context of post-trial briefing,

17

Montgomery Park "reconcile[d] disparities in the final amount" of the Termination Fee, as permitted by the District Court's earlier summary judgment ruling. (JA 1274-76). Without waiver of its position that NCO had not terminated the Lease early, Montgomery Park requested entry of judgment in the amount of $100,721.42 (which equates to the principal amount of $79,067.70, plus prejudgment interest at the statutory rate of 6% from December 15, 2010 through July 8, 2015). (*Id.*).

In its Memorandum Opinion dated August 19, 2015, the District Court recognized that "the only disparity in NCO's final payment of the Termination Fee before the Court is the improperly deducted Janitorial Allowance." (JA 1275). In fact, the District Court noted that in Count IV of its Complaint:

> NCO conceded that in the event the Court found that NCO's deduction of the Janitorial Allowance from the Termination Fee was improper, 'the proper remedy is for NCO to pay the amount of the Janitorial Allowance not included in the Termination Fee and to allow the Lease to terminate. . . .'

(*Id.*). Based on these findings, the District Court entered final judgment in favor of Montgomery Park in the amount of $101,721.42. (JA 1276).

## SUMMARY OF THE ARGUMENT

While correctly finding that NCO's deduction of the Janitorial Allowance from the Termination Fee was improper, the District Court erred in holding that NCO, nevertheless, terminated the Lease under the Early Termination Provision. Under Maryland law, the exercise of a contractual option requires strict

compliance with its conditions, even when the provision does not expressly state that strict compliance is required. Here, the Early Termination Provision clearly mandates "strict compliance" with "all" of the conditions of the option, including payment of the Termination Fee in the required amount. The District Court's interpretation of that express condition as a "non-material covenant" for which strict compliance was not required, therefore, defies the plain language of the Early Termination Provision and violates cardinal principles of contract construction under Maryland law.

When those principles are properly applied, NCO's failure to strictly comply with the Early Termination Provision precludes, as a matter of law, its attempted exercise of the option. Accordingly, the declaratory judgment entered in favor of NCO should be reversed, and this Court should declare as a matter of law that the Lease did not terminate early. The case then should be remanded for the purpose of permitting Montgomery Park to pursue its claim for breach of contract arising out of NCO's failure to pay Rent during the remaining Term of the Lease.

Alternatively, even if this Court were to accept the District Court's contractual construction of the Early Termination Provision as a mere covenant, entry of summary judgment in favor of NCO constitutes reversible error. NCO's undisputed failure to pay the Termination Fee in the required amount raises factual questions regarding NCO's supposed, yet genuinely disputed, "good faith attempt"

to strictly comply with the Early Termination Provision and the materiality of the breach of the purported covenant. Furthermore, inherent in the District Court's contractual construction is the unsupported factual finding that an exact calculation of the Termination Fee was "impractical." Not only was NCO's use of estimates in calculating the Additional Rent components of the Termination Fee never challenged, but the shortfall in NCO's payment occasioned by its improper deduction of the Janitorial Allowance had nothing to do with those estimates. Thus, there was no basis for the District Court's finding of impracticality – a factual issue that, in any event, was genuinely disputed by Montgomery Park so as to preclude the entry of summary judgment in favor of NCO.

Accordingly, if the declaratory judgment entered in favor of NCO is not reversed as a matter of law, the case should be remanded for trial on the genuinely disputed factual issues inherent in the District Court's erroneous construction of the Lease, and Montgomery Park's claim for breach of contract arising out NCO's default of its contractual obligation to pay Rent.

## ARGUMENT

### I.     Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*, employing the same standard applied by the district court. *Washington Metro Area Transit Authority v. Potomac Investment Properties Inc.,* 476 F.3d 231, 234 (4th

Cir. 2007) (citing *Xoom Inc. v. Imageline, Inc.*, 323 F.3d 279, 282 (4th Cir. 2003)). A district court should only grant summary judgment when there is no genuine dispute as to an issue of material fact, and the moving party is entitled to judgment as a matter of law. *Nadar v. Blair,* 549 F.3d 953, 958 (4th Cir. 2008) (citing FED. R. CIV. P. 56(c)).

## II.    The District Court's Construction of the Early Termination Provision was Wrong as a Matter of Law.

Under Maryland law, "Leases are contracts, and, as such are to be construed by application of the well-established rules of contract interpretation." *Chesapeake Bank of Maryland v. Monro Muffler/Brake, Inc.*, 891 A.2d 384, 390 (Md. App. 2006) (hereinafter "*Chesapeake Bank*").   In determining the contractual obligations of the parties, Maryland courts have long adhered to the "objective interpretation of contracts." *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.,* 73 A.3d 224, 232 (Md. 2013).  Under that objective view, "The terms of the contract must be interpreted in context and be given their ordinary and usual meaning." *Middlebrook Tech LLC v. Moore*, 849 A.2d 63, 79 (Md. App. 2004).  "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and [the] court must presume that the parties meant what they expressed." *Taylor v. Nationsbank, N.A.*, 776 A.2d 645, 653 (Md. 1999) (citing *General Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md.

1985)).  In that event, parol evidence is inadmissible,[7] and the Court "will look solely to what was written as conclusive of the parties' intent."  *Chesapeake Bank,* 891 A.2d at 391.

###### A.    Maryland Law Regarding Contractual Options

Maryland courts routinely apply these principles in the context of contractual options.  Under Maryland law, the exercise of a contractual option requires strict compliance (or "exact matching") with its express conditions. *Elderkin v. Carroll*, 941 A.2d 1127, 1133 (Md. 2008) (hereinafter "*Elderkin*") (citing *Foard v. Snider*, 109 A.2d 101, 105-06 (Md. 1954) (the exercise of an option must be done "in exact accord" with the terms of the option)); *Chesapeake Bank,* 981 A.2d at 397-98.  "The question of whether the stipulation in a contract constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed." *Id*. at 391. "Although no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that', are commonly used to indicate that performance has expressly been made conditional, . . . ." *Id*.

If the language of the option is clear and unambiguous, strict compliance with its express conditions is required to exercise the option – irrespective of the "relative hardships" to the parties. *Id.* at 399 (tenant's mistaken failure to deliver

---

[7] *Sy-Lene of Washington Inc., v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 544 (Md. 2003).

timely notice of its intent to renew a commercial lease resulted in forfeiture of the renewal option); *see also Holzman v. Fiola Blum Inc.,* 726 A.2d 818, 827 (Md. 1999) (The court will not "rewrite the terms of the contract or draw up a new one . . . merely to avoid hardship or because one party has become dissatisfied with it provisions.").

### B.    The District Court Misread the Early Termination Provision.

While cognizant of these principles, the District Court misapplied them in concluding that, "The Lease does not make clear that proper calculation of the Termination Fee is a required condition of early termination." (JA 764). Notwithstanding that sentence [1] of the Early Termination Provision demanded "***strict compliance***" with "***all***" requirements, including payment of a Termination Fee "***equal to ten (10) times the monthly installment . . . of  Rent . . .,***" the District Court held that NCO's failure to pay the Termination Fee in the required amount was not fatal to its exercise of the early termination option.  (JA 760-65).

Although conceding that sentence [2] (which requires NCO to timely pay "the Termination Fee ***as required above***"), "may suggest that proper calculation [of the Termination Fee] should be considered a condition to the right to terminate," the District Court found that "the immediate following clause [sentence 3] does not." (JA 764).   Rather, the District Court reasoned that because sentence 3 did not repeat the phrase "as required above," the only conditions of the early

termination option are: timely delivery of the Termination Notice and timely payment of the Termination Fee. (JA 763; 773-74). Thus, according to the District Court, the amount of the Termination Fee "equal to ten (10) times the monthly installment . . . of Rent . . ." constitutes a mere "definitional descriptor," not a condition precedent to the exercise of the option. (JA 773).

This reading of the Early Termination Provision, however, contradicts its express terms. The first sentence of the Early Termination Provision plainly establishes that proper calculation of the Termination Fee is a condition precedent to the exercise of the early termination option for which "strict compliance" is required. (JA 135). This express condition is then reinforced in the second sentence, which reiterates the condition that payment of the Termination Fee must be made **"*as required above*"**, referencing the first sentence of the provision. (*Id.*). Having thus twice established that payment of the Termination Fee in the required amount is a condition precedent to early termination of the Lease, the third sentence merely states the converse proposition that a failure to meet the conditions precedent defeats the exercise of the option. (*Id.*).

By stating that converse proposition, the third sentence serves the important purpose of emphasizing the adverse consequences of failing to strictly comply with the conditions precedent clearly set forth in the prior two sentences. Contracting parties often take a "belt-and-suspenders" approach when expressing important

24

contractual provisions that have material consequences to both the parties. *See, e.g.*, *Builder's Mutual Ins. Co. v. Parallel Design & Dev. LLC*, 785 F. Supp. 2d 535, 548 n. 6 (E.D. Va. 2011). The mere fact that the third sentence does not repeat the phrase "as required above" does not as a matter of law transform a fatal failure to strictly comply with an express condition into a "non-material breach" of a covenant. By so holding, the District Court improperly renders the first two sentences of the Early Termination Provision nugatory in violation of Maryland's cardinal rules of contract construction, so as to frustrate the clearly stated intent of the Lease. *Ocean Petroleum, Co., Inc. v. Yanek*, 5 A.3d 683, 691-693 (Md. 2010) ("Our rules of contract construction require us, however, to 'avoid interpreting contracts so as to nullify their express terms.'") (citing *Calomiris v. Woods*, 727 A.2d 358, 366 (Md. 1999)).

### C.    The District Court Misapplied the Law.

Based on its misreading of the Early Termination Provision, the District Court held that a more flexible interpretation is appropriate under Maryland law. (JA 760-65; 773-74). In adopting this more flexible approach, the District Court relied primarily on the decision of the Maryland Court of Appeals in *Beckenheimer's Inc. v. Alameda Associates*, 611 A.2d 105 (Md. 1992) (hereinafter "*Beckenheimer's*"). (*Id.*).

In *Beckenheimer's,* the Court of Appeals reversed a trial court's grant of summary judgment in favor of the optionor after finding that the optionee had failed to renew a sublease in accordance with its terms. 611 A.2d at 109.  To exercise the renewal option, the Sublessee was required to send timely notice of its election to do so, and, "the net worth of the Sublessee on the date of such notice (as evidenced by the most recent certified financial statements of Sublessee which shall be included in such notice)" was required to be "at least equal to the net worth of Sublessee on the date hereof." *Id.* at 107.

In the context of that provision, the Court of Appeals recognized that while the Sublessee's actual net worth at the time of renewal was a substantive condition to the option, the manner in which the Sublessee evidenced its net worth (*i.e.*, the financial statement) was simply a covenant. *Id.* at 113.  In compliance with the condition, the Sublessee's net worth actually increased during the term of the sublease and, therefore, "the essence of the net worth requirement, in fact, was satisfied as of the time [the Sublessee] exercised the option." *Id.* at 113.  In light of this factual finding, the Court of Appeals held that the Sublessee's failure to properly evidence its compliance with the net worth condition by providing the requisite financial statement was a non-material breach of a covenant, not a failure to meet a condition precedent to the renewal.  *Id.*

In stark contrast to *Beckenheimer's*, both the timing and the monetary amount of NCO's payment of the Termination Fee in this case are plainly conditions precedents for which "strict compliance" is required. Payment of the Termination Fee in the proper amount is a substantive condition of early termination, not merely evidence of compliance with a condition. In *Beckenheimer's*, the Court of Appeals found that, "***Unless the agreement makes it clear that the event is required as a condition***, it is fairer to apply these more flexible rules." *Id*. at 114 (emphasis added). Here, because the Lease unequivocally states that payment of the Termination Fee must be in the required amount in order to exercise the option, the more flexible approach should not have been applied in this case.

On two separate occasions, Maryland courts have recognized the unique facts of and limited holding reached in *Beckenheimer's*. In *Chesapeake Bank, supra*, the Court of Special Appeals rejected a tenant's reliance on *Beckenheimer's* to excuse its failure to provide timely notice of an extension of a lease. *Chesapeake Bank,* 891 A.2d at 397. As a condition precedent to extending the lease, the tenant, Monroe Muffler/Brake, Inc. ("Monroe"), was required to give 90-days' written notice of its intent to renew. *Id.* at 391. At trial, a representative of the tenant, Monroe, testified that he inadvertently entered in a computer system (which kept track of Monroe's 615 locations) that the lease at

issue "called for sixty days' notice of extension, rather than the ninety days stated in the lease." *Id.* at 389. Although the tenant gave 63-days advance written notice of its intention to renew the Lease, the Maryland court held that the tenant's failure to strictly comply with the condition precedent of 90-days advance notice defeated its attempt to exercise the option. *Id.* at 391. Relying on *Beckenheimer's*, the tenant argued that in equity its mistaken tardiness of 27 days in sending the requisite notice should be excused. *Id.* In rejecting this argument, the Maryland Court held:

> [Tenant] failed to meet a condition precedent for the exercise of an option to which it had no right, apart from the terms of the lease. It simply failed to exercise its option, thus allowing the lease to expire. In such a case, the relative hardships are immaterial.

*Chesapeake Bank*, 891 A.2d at 399.

Similarly, in *Elderkin,* the Court of Appeals distinguished *Beckenheimer's* by pointing out that the "actual condition of renewal of the sublease required a specified net worth of the optionee and the provision requiring a certified statement of net worth was for the optioner's convenience in determining that net worth." *Elderkin*, 941 A.2d at 1134. In contrasting that situation to the case before it, the *Elderkin* Court held that an optionee's repeated failures to strictly comply with express conditions of an option to purchase a piece of property resulted in the forfeiture of the option. Among the failures deemed fatal to the exercise of the option was, *inter alia*, a proposed contract to purchase the

property that adjusted the purchase price by: (i) setting off a payment obligation allegedly due to the purchaser by the seller and (ii) reducing the price by a $15,000 "clean-up" fee. *Id.* at 1135. Holding that the amount of the purchase price, not just the timing, of the offer to purchase the property was an essential condition to the option, the Court held that the purchaser failed to properly exercise the option. *Id.*

Much like the situation in *Elderkin,* both the timing and the amount of the Termination Fee here are essential and clearly stated pre-conditions to the exercise of the early termination option. By unilaterally and improperly setting off and adjusting the Termination Fee by the Janitorial Allowance, NCO, like the plaintiff in *Elderkin*, forfeited its option.

The error in the District Court's legal analysis in this case is further illustrated by the fact that in none of the three leading Maryland cases (*Beckenheimer's*, *Elderkin* and *Chesapeake Bank*) did the pertinent contractual provisions expressly use the phrase "strict compliance." Thus, the courts in those cases were left with the task of construing conditional language such as "if" or "provided that" to determine whether the parties intended a requirement to be treated as a condition for which strict compliance was required. Even then, the Maryland courts were reluctant to find covenants in otherwise conditional

provisions,[8] and did so only in a situation where the substantive condition was met, even though the method of evidencing that compliance did not "exactly match" the contractual requirement.[9]

Here, the conditional nature of the Early Termination Provision could not have been clearer: "Tenant *shall* have a one-time, *conditional* right to terminate"; "upon Tenant's *strict compliance* with *all* of the following requirements"; "*If (and only if)* Tenant both timely delivers … and timely pays"; and "Tenant shall not have the right to terminate *if* it fails ... ." (JA 135) (emphasis added). Payment of the Termination Fee in an amount "*equal to ten (10) times the monthly installment . . . of Rent . . . .*", therefore, was clearly and unambiguously a condition precedent to NCO's exercise of the early termination option, not a mere covenant. (*Id.*) (emphasis added). By refusing to give effect to that clear language, the District Court erred as a matter of law.

### D. The District Court's Unsupported Finding of Impracticality Cannot Transform an Express Condition into a "Non-Material Covenant."

In support of its decision, the District Court found that interpreting the Early Termination Provision to require exact calculation of the Termination Fee was "impractical" due to the need for an accounting and appropriate adjustments of

---

[8] *See Elderkin*, 941 A.2d at 1135; *Chesapeake Bank,* 891 A.2d at 399.

[9] *See Beckenheimer's*, 611 A.2d at 113.

certain Additional Rent components in the final fee amount. (JA 764-65; 774).
Based on this factual finding, the Court construed a clear and unambiguous
condition to be a mere covenant. (*Id*.).  In so doing, the District Court erred in
several respects.

First, perceived practical difficulties in meeting an express condition do not
render it any less of a condition.  As made clear in *Beckenheimer's,* the "more
flexible" approach adopted by the District Court can only be used "unless the
agreement makes clear that the event is required as a condition."  *Beckenheimer's*,
611 A.2d at 114.  In determining whether "an event is required as a condition," the
court determines "the intent of the parties to be gathered from the words they have
employed." *Chesapeake Bank,* 891 A.2d at 391.  As detailed above, the conditional
nature of the Early Termination Provision expressly requiring "**strict compliance**"
with "**all**" of the stated requirements of the option could not have been clearer. (JA
135) (emphasis added).

Contrary to the District Court's ruling, therefore, perceived practical hurdles
in NCO's ability to strictly comply with the condition does not invite a court to
rewrite the contract by transforming an express condition into a "non-material
covenant."    In effect, the District Court excuses NCO's performance of the
condition based on a finding of impracticality that was never pled by NCO, nor

31

supported by the record in this case.[10]   To the contrary, NCO affirmatively sought a declaration from the Court that its payment of the Termination Fee, less the Janitorial Allowance, was proper under the Early Termination Provision. (JA 25). It then conceded in its summary judgment briefing that the Termination Fee "must be paid in full" in order to exercise the early termination option under Section 1.05 of the Lease. (JA 774) (quoting Dkt. No. 53 at p. 18, n. 11)).  Indeed, as ultimately recognized by the District Court, "the only disparity in NCO's final payment of the Termination Fee before the Court is the improperly deducted Janitorial Allowance." (JA 1275).

Within the context of the case-in-controversy pled by the parties, the undisputed material facts presented to the Court on summary judgment were that: (1) NCO calculated and made the first installment payment of the Termination Fee, without objection by Montgomery Park; (2) NCO calculated and paid the second installment of the Termination Fee including certain "Additional Rent" adjustments, to which Montgomery never objected; and (3) the only challenge raised by Montgomery Park to the exercise of the early termination option was NCO's deduction from the second installment payment of the Janitorial Allowance, which, as a matter of law, it was not permitted to take. Since the

---

[10] (JA 774) (In fact, in explaining its rationale, the District Court stated that "the impracticality to exact matching . . . *excused* NCO's failure to properly calculate the Termination Fee.") (emphasis added).

shortfall in the Termination Fee had nothing to do with the supposed inability of NCO to precisely calculate that fee, there was no factual basis to support this Court's grant of summary judgment in favor of NCO on the issue of early termination.

In its decision, the District Court turned a blind eye to all of these undisputed facts, finding them to be inadmissible under the parol evidence rule. (JA 774). The District Court did so, however, based on its mistaken view that the perceived impracticality of NCO's compliance with a condition of early termination presented a question of contractual construction, rather than an unpled defense for which factual findings were inherently necessary. Had the District Court considered those undisputed facts, it would have had to conclude on this record that by improperly deducting the Janitorial Allowance from the Termination Fee, NCO failed to exercise its early termination option. Accordingly, the declaratory judgment entered in favor of NCO should be reversed, and this Court should declare as a matter of law that the Lease did not terminate early.

## II. Even if Accepted, the District Court's Erroneous Construction of the Early Termination Provision Precluded Summary Judgment in Favor of NCO.

Although payment of the Termination Fee in the required amount is clearly and unambiguously a condition precedent to the exercise of the Early Termination Provision, the District Court found the provision to be unclear. (JA 764). While

33

conceding that use of the phrase "*as required above*" in the second sentence "may suggest that proper calculation should be considered a condition to the right to terminate," the District Court found that "the immediate following clause [sentence 3] does not." (*Id*.) (emphasis added). Thus, inherent in the District Court's construction of the Early Termination Provision is a perceived (yet non-existent) ambiguity between the second and third sentences arising out of the fact that the third sentence did not repeat the phrase "*as required above*." (*Id*.) .

The District Court, however, insisted that it "does not find ambiguity in the Early Termination Provision" and simply disagrees with Montgomery Park's interpretation of the provision. (JA 774).   Nevertheless, the District's Court decision hinges on its view that "the language of the provision does not clearly reflect the parties' intent to include the calculation as a condition. . . . " (*Id*.).  That purported lack of clarity, in turn, derives from a perceived inconsistency between the second and third sentences of the Early Termination Provision – *i.e*., an ambiguity. *See Chesapeake Bank,* 891 A.2d at 391 ("A contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person.").  Thus, although not acknowledged by the District Court, its construction of the Lease inherently depends on a perceived ambiguity in the contractual language.

34

If the District Court's erroneous construction of the Early Termination Provision is accepted, summary judgment cannot be entered in favor of NCO. Upon a finding of ambiguity, "the court must consider any extrinsic evidence that sheds light on the intentions of the parties at the time of the execution of the contract." *Sy-Lene of Washington Inc*., 829 A.2d at 546. If that "extrinsic evidence in the summary judgment materials leaves genuine issues of material fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Washington Metro Area Transit Authority v. Potomac Investment Properties Inc.,* 476 F.3d at 234.

Here, the District Court's erroneous construction of the Lease raised triable issues of fact that could not be resolved in favor of NCO on summary judgment including:

- The intent of the parties as to whether proper calculation of the Termination Fee was a condition precedent to the exercise of the early termination option;

- NCO's purported "good faith" in attempting to comply with the Early Termination Provision in light of the perceived impracticality of that task; and

- The materiality of NCO's failure to pay the Termination Fee in the proper amount.

35

### A.    The Parties' Intent to Condition the Option on NCO's Timely Payment of the Termination Fee in the Required Amount

In addition to the plain language of the Early Termination Provision itself, extrinsic evidence presented on summary judgment revealed the parties' understanding that timely payment of the Termination Fee in the required amount was necessary to the exercise of the option.  For its part, Montgomery Park clearly understood that a failure by NCO to deliver the Termination Fee in the requisite amount resulted in a forfeiture of the early termination option. (JA 255-57; 636-37).  Similarly, NCO's signatory to the Lease, Joshua Gindin, readily acknowledged that, "[I]n order to exercise the termination right, [NCO] had to strictly comply with the requirement of paying ten months' rent as defined by the Lease." (JA 512-13).   So self-evident was this contractual intent that NCO's own claim was premised on the allegation that it calculated the Termination Fee correctly (JA 25), and it later conceded that the Termination Fee "must be paid in full" in order to exercise the early termination option. (JA 774). At a minimum, therefore, the record before the District Court on summary judgment created a genuine dispute of material fact as to whether proper calculation of the Termination Fee is a condition precedent with which NCO had to strictly comply.

## B. NCO's Purported "Good Faith" Attempt to Strictly Comply with the Early Termination Provision

In granting summary judgment in favor of NCO, the District Court held that "NCO's *good faith* attempt to strictly comply with the condition precedent amounts to proper performance of the Early Termination Option, and that NCO's failure to calculate the Termination Fee was a non-material breach subject to remedy." (JA 765). On reconsideration, the District Court clarified that:

> "[A]lthough misstated, the Court's use of the term 'good faith attempt' was not used to reflect a finding of fact that NCO did not act in bad faith, but was merely intended to convey the Court's conclusion that the plain language of the provision created impracticality to exact matching, which excused NCO's failure to properly calculate the Termination Fee."

(JA 774) (emphasis added).

Even as clarified, NCO's purported good faith attempt to comply with the Early Termination Provision in light of the perceived impracticality of accomplishing that task was both genuinely disputed and ultimately immaterial to NCO's effort to exercise the early termination option. As a matter of fact, NCO's use of estimates in calculating the Additional Rent components did not practically inhibit NCO in its attempt to exercise the early termination option. The estimates used were never challenged by Montgomery Park, and there was no factual basis for concluding that use of those estimates rendered strict compliance with the requirements of the option "impractical."

37

Moreover, NCO's failure to properly exercise its early termination option had nothing to do with its use of estimates in calculating the Additional Rent components of the Termination Fee. (JA 373-74). Rather, NCO's failure to exercise the option was due solely to its improper deduction of the Janitorial Allowance from the second installment of the Termination Fee. (JA 255-58; 554-56; 598-99). In deliberately taking that improper deduction, NCO acted unilaterally without any advance notification to Montgomery Park. (JA 374). Thus, even when viewed in the context of perceived impracticality, NCO's purported "good faith," if relevant at all, presented a triable issue of fact, not grounds for summary judgment in favor of NCO. *Laws v. Thompson*, 554 A.2d 1264, 1270 (Md. App. 1989) ("A question of good faith 'almost always' presents an issue of material fact."); *see also Bond v. Messerman,* 873 A.2d 417, 432 (Md. App. 2005).

## C. The Materiality of NCO's Failure to pay the Termination Fee in the Required Amount

Finally, even if viewed as a mere covenant, the District's Court erred in concluding, as a matter of law, that NCO's failure to pay the Termination Fee in the required amount was a "non-material breach" thereof. (JA 765). Nowhere in its decision does the District Court explain the factual basis for its conclusion that NCO's short-payment of the Termination Fee was non-material as matter of law. "The materiality of a breach of contract is a factual inquiry.'" *Weichart v. Faust,* 19 A.3d 393, 399, n.1 (Md. 2011); *see also Weaver v. Zenimax,* 923 A.2d 1032,

38

1053 (Md. App. 2007) ("Even if a breach is assumed, materiality is generally a question of fact."). Here, the shorted $79,067.70 amount was neither trivial, nor a mere oversight. Rather, it was a deliberate and improper short-payment of a significant portion of the Termination Fee in violation of the express conditions of the early termination option. At a minimum, therefore, the "materiality" of this shortfall created a triable issue of fact that precluded the entry of summary judgment in favor of NCO.

## CONCLUSION

**WHEREFORE,** for all the foregoing reasons, Montgomery Park respectfully requests that this Court:

(1)     Reverse the declaratory judgment entered in favor of NCO and declare as a matter of law that the Lease did not terminate early. The case then should be remanded for the purpose of permitting Montgomery Park to pursue its claim for breach of contract arising out of NCO's failure to pay Rent during the remaining Term of the Lease; or

(2)     Alternatively, remand the case for trial on the genuinely disputed factual issues inherent in the District Court's erroneous construction of the Lease, and Montgomery Park's claim for breach of contract arising out NCO's default of its contractual obligation to pay Rent.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Montgomery Park respectfully requests oral argument. This case raises controlling issues of governing Maryland law regarding "strict compliance" with conditions precedent to the exercise of contractual options. Its outcome is important as it will provide guidance to drafters of leases and other contracts in Maryland who justifiably rely on the phrase "strict compliance" to require exact performance with express conditions of contractual options.

|  |  |
|---|---|
| October 23, 2015 | /s/ John E. McCann, Jr. |
|  | John E. McCann, Jr. |
|  | Ranak K. Jasani |
|  | MILES & STOCKBRIDGE P.C. |
|  | 100 Light Street |
|  | Baltimore, Maryland 21202 |
|  | (410) 727-6464 |
|  | jmccann@milesstockbridge.com |
|  | rjasani@milesstockbridge.com |
|  |  |
|  | /s/ Howard G. Goldberg |
|  | Howard G. Goldberg |
|  | GOLDBERG & BANKS, P.C. |
|  | 1829 Reisterstown Rd. |
|  | Baltimore, Maryland 21208 |
|  | (443) 940-1340 |
|  | hgoldberg@gbpclawfirm.com |
|  |  |
|  | Counsel for Appellant, |
|  |   Montgomery Park, LLC. |

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
### Certificate of Compliance with Type-Volume Limitation,
### Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>9,268</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

    <u>/s/ John E. McCann, Jr.</u>
    John E. McCann, Jr.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on October 23, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

<u>/s/ Melissa A. Dockery</u>
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES, LLC
P.O. Box 1460
Richmond, VA 23218
(804) 249-7770